IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KEITH BRYAN WEBB,**

    **Petitioner,**

**v.**                 **CIVIL ACTION NO. 5:16cv44**
                      **(Judge Stamp)**

**STEVEN FIEGEL, Acting Warden,**

    **Respondent.**

## REPORT AND RECCOMENDATION

### Introduction

On March 31, 2016, Petitioner, Keith Bryan Webb, filed this *pro se* Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241. ECF No. 1. On April 18, 2016, Petitioner paid the required $5.00 filing fee. ECF No. 12. On April 20, 2016, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, on April 20, 2016, an Order to Show Cause was entered. ECF No. 16. On May 4, 2016, Respondent filed a Motion to Dismiss or, in the alternative, for Summary Judgment. EC No. 21. On May 6, 2016, a Roseboro Notice was issued. ECF No. 23. Petitioner filed a response in opposition on May 23, 2016. ECF No. 33.This matter is now pending before the undersigned for a Report and Recommendation pursuant to the LR PL P 2.

### Factual History

June Webb was a soldier in the United States Army stationed at Fort Bliss at the time of the events which led to Petitioner's conviction. Fort Bliss is a military reservation located in El

1

Paso, Texas. June Webb and petitioner were not legally married. At a prior point in time, Petitioner was legally married to Robin Webb and never divorced her prior to "marrying" June Webb. June Webb, Keith Webb, Robin Webb, and children from both unions all resided in the same home on Fort Bliss. In the early morning hours of September 6, 1983, June Webb and Petitioner appeared at the Criminal Investigation Division (CID) office at Fort Bliss ostensibly to report that June Webb had been raped. However, once June Webb was physically separated from Petitioner, she alleged that he had killed her son, Steve Marcel Wilson, some weeks earlier. Petitioner fled the CID office and was eventually located on top of a communications tower where he was threatening to commit suicide. While on the tower, Petitioner repeatedly confessed to a psychiatrist and negotiator that he had bashed his son's head against the wall, that he is scalded his son, that his son had died, and that he had been buried him in the desert. Neither the psychiatrist nor the negotiator gave Webb <u>Miranda</u> warnings.

On or about January 26, 1984, Petitioner was convicted in the United States District Court for the Western District of Texas of second degree murder in violation of 18 U.S.C. § 1111.[1] In addition, he was convicted of two counts of injury to a child in violation of 18 U.S.C. §§

---

[1] At the time of Petitioner's conviction, 18 U.S.C. § 1111 provided:

(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to affect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree

(b) Within the special maritime and territorial jurisdiction of the United States….

7 and 13 (the Assimilative Crimes Act)[2] and Tex. Penal Code Ann. § 22.04 (a).[3] However, the United States Court of Appeals for the Fifth Circuit held that "two of the three confessions were obtained in violation of Edwards v. Arizona, 451 U.S. 477 (1981)." United States v. Webb, 755 Fed 2nd 382, 385 (5th Cir. 1985). Therefore, Petitioner's convictions were reversed, and his case was remanded for a new trial. Id. At the conclusion of Petitioner's second trial, he was again convicted of the three crimes and was "sentenced to life imprisonment and two terms of thirty years imprisonment, respectively, with the thirty year terms to be served concurrently with his life sentence." United States v. Webb, 796 F.2d 60, 61 – 62 (5th Cir. 1986).

---

[2] The Assimilative Crimes Act consists of 18 U.S.C. §§ 7 and 13. Section 7 provides in pertinent part:
> The term ". . . Territorial jurisdiction of the United States," as used in this title, includes:
> …
> (3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful buildings.

Section 13 provides in pertinent part:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment

[3] Tex. Penal Code. Ann. § 22.04 provides in pertinent part:

(a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission engages in conduct that causes to a child who is 14 years of age or older:

(1) Serious bodily injury;
(2) serious physical or mental deficiency or impairment;
(3) disfigurement or deformity; or
(4) bodily injury.

(b) An offense under Subsection (a) (one), (2), or (3) of this section is a felony of the 1st° when the conduct is committed intentionally or knowingly. When the conduct is engaged in recklessly it shall be a felony of the third degree.

3

In June, 1993, Petitioner's first parole hearing was conducted. ECF No. 22-1 at 5. On July 13, 1993, the United States Parole Commission ("Commission") denied Petitioner parole and gave the following reasons for its decision: "[Y]ou tortured the victim by causing him to endure standing in scalding water, and while injured, you failed to seek medical assistance which may have saved his life." Id. at 8. The Commission informed Petitioner that he would be reconsidered for parole in June, 2008. Id.

Statutory interim hearings have been conducted every 2 years, resulting in no change in the July 1993 decision. ECF Nos. 22-1 at 11 – 39. On each occasion that Petitioner pursued an administrative appeal, the Commission's decision was affirmed by the Board. Id.

On April 28, 2008, the Commission conducted a fifteen year reconsideration hearing for Petitioner. ECF No. 22-1 at 41. Under the Commission's rules, a 15 year reconsideration hearing is conducted as a de novo evaluation of an inmate's case looking at his entire incarceration, i.e., as if it were a new initial hearing. See 28 C.F.R. § 2.14(c). ("A fifteen year reconsideration hearing shall be a full reassessment of the case pursuant to the procedures at 28 C.F.R. § 2.13."). In contrast, the purpose of a statutory interim hearing is to consider any significant developments or changes to a prisoner's status that may have occurred subsequent to the initial hearing. See 28 C.F.R. § 2.14(a). Following the hearing, the Commission ordered that Petitioner serve to the expiration of the sentence. ECF No. 22-1 at 42. The National Appeals Board affirmed this decision on administrative appeal. Id. at 44.

Petitioner continued to receive his statutory interim hearings biannually on January 21, 2010, and May 30, 2012. ECF No. 22-1 at 45-54. The Commission ordered no change in its prior order that Petitioner serve to the expiration of his sentence. Id.

4

Pursuant to 18 U.S.C. § 4206(d), an inmate who has served to the two thirds date of his sentence "shall be released on parole" unless the Commission "determines that he has seriously or frequently violated institutional rules and regulations or there is a reasonable probability that he will commit any Federal, State, or local crime." Release pursuant to 18 U.S.C. § 4206(d) is termed "mandatory parole." Therefore, by notice of action dated June 3, 2013, prior to Petitioner's to his two-thirds date, the Commission ordered that a mandatory parole hearing be conducted in his case. The Commission conducted a mandatory parole hearing for Petitioner on January 16, 2014. ECF No. 22-1 at 55-66. As a result of that hearing, the Commission denied mandatory parole, and ordered that Petitioner serve to the expiration of his sentence. Id. at 62. The notice of action that was sent out following this hearing contained two clerical errors. First, it failed to include the reasons for the Commission's actions that had been recommended to the Commission by the hearing examiner, and adopted by the Commission. ECF No. 22-1 at 62. Second, the notice of action also erroneously informed Petitioner that the Commission's decision was not administratively appealable. Id. On August 25, 2014, the Commission issued a corrected notice of action to inform Petitioner of the Commission's reasons for denial of mandatory parole. ECF No. 22-1 at 63. In addition, the Commission informed Petitioner that its decision was administratively appealable. Id. The National Appeals Board affirmed this decision on administrative appeal. Id. at 64

Finally, on January 5, 2016, the Commission attempted to conduct a statutory interim hearing for Petitioner. ECF No. 22-1 at 65-66. After explaining the purpose of the hearing and the criteria upon which the case would be reviewed, the examiner went over the details of the offense conviction from Petitioner's presentence report. Id. When asked if he admitted or

5

denied committing the base offense, Petitioner refused to answer. From that point forward, Petitioner was completely uncooperative and refused to answer any of the examiner's questions. Petitioner did not agree with how his offense was captioned -- as second degree murder -- and when the examiner asked what he stood convicted of, Petitioner stated only that he was being held illegally and his conviction was unjust. In addition, Petitioner stated that he had significant new information to present to the Commissioner. However, when the examiner asked for the information, Petitioner simply continued to state that his sentence was illegal and unjust. The examiner explained to Petitioner that he is serving a life sentence for murder and until such time as the sentence is vacated or modified, the Commission must assume guilt. Petitioner eventually stood up and walked out of the hearing room. As Petitioner walked out of the room, the examiner advised him that his leaving would be considered a waiver of parole and that the Commission would not place him back on the docket until he reapplied. Petitioner did not return to the hearing room. As a result of the hearing, the Commission issued a notice of action dated January 27, 2016, whereby the Commission stated that it considered Petitioner's failure to meaningfully participate in his statutory interim hearing on January 5, 2016, as a waiver of the hearing. ECF No. 22-1 at 67. The notice also advised Petitioner that he would not be scheduled for another hearing until he submitted a new application. Id.

## Contentions of the Parties

In support of his pending petition, Petitioner appears to make several arguments. First, he alleges that he is actually innocent of the crime of second degree murder because he was not indicted for that offense. Second, Petitioner alleges that the Commission is unlawfully detaining him in violation of 18 U.S.C. § 4206(d). He also alleges that the Commission's failure

6

to grant him parole constitutes cruel and unusual punishment. For relief, he seeks immediate relief from federal custody.

In response to the petition, Respondent argues that Petitioner's "innocence claim" is not only an abuse of the writ but is also an improper claim under § 2241. In addition, Respondent argues that Petitioner is not entitled to parole.

### Standard of Review

A. **Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); See Also Martin at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain "more than

labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly at 554-55. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56(c) summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Circ. 1990). However, the "mere existence of

a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587.

## Analysis

### Abuse of Writ

Prior to the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2244 authorized dismissal of a successive habeas petition that presented "no new grounds not heretofore presented and determined." McClesky v. Zant, 499 U.S. 467, 483 (1991). As amended by AEDPA, § 2244(a) now provides:

> No circuit or district judge shall be required to entertain an application for writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for writ of habeas corpus, except as governed in section 2255.

A few circuit and district courts have held that § 2244(a) bars a subsequent § 2241 as a successive petition where the grounds raised in the subsequent petition were denied in a prior § 2241 action. See Valona v. United States, 138 F.3d 693, 695 (7th Cir. 1998); Chambers v. United States, 106 F.3d 472, 475 (2d Cir. 1997); Byrd v. Gillis, No. CIV.A. 97-4697, 1997 WL 698157, at *1 (E.D. Pa. Nov. 5, 1997). For a petition to be barred as successive under this provision, the same claims must have been raised and adjudicated on the merits in the petitioner's prior habeas proceedings. Kuhlmann v. Wilson, 477 U.S. 436, 444 n.6 (1986) (plurality opinion). Under the abuse-of-the-writ doctrine, a court may dismiss a subsequent petition when "a prisoner files a petition raising grounds that were available but not relied upon in a prior petition, or engages in other conduct that disentitles him to the relief he seeks." Id. The Supreme Court has noted that the restrictions on successive petitions set forth in § 2244(a) "constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'" Felker v. Turpin, 518 U.S. 651, 664 (1996).

On May 26, 2015, Petitioner filed a § 2241 petition in the United States District Court for the District of Maryland. As in the instant case, Petitioner challenged his 1985 conviction for murder in the Western District of Texas. The basis of his challenge was that the indictment was defective, thus denying him of his right to adequate notice of the charges against him. On June 3, 2015, upon application of the <u>Jones</u> standard, the petition was dismissed for lack of jurisdiction. ECF No. 22-3.

The claim that Petitioner raised with respect to "actual innocence" in that petition is one of the claims raised in the instant petition. In addition, although Petitioner also raises a claim regarding identification of the child's body and prosecutorial misconduct in closing arguments, those claims were available in 2015, when he filed his § 2241 in the District of Maryland. Petitioner cannot benefit from another "bite at the apple" simply because one year has passed since the denial of his Maryland petition. Accordingly, the undersigned recommends that Petitioner's claim with respect to "actual innocence" be denied and dismissed with prejudice as successive and as an abuse of the writ. However, even if the Court is not inclined to dismiss that claims as an abuse of the writ, it is still due to be dismissed as discussed more fully below.

**<u>Actual Innocence</u>**

Prisoners seeking to challenge the validity of their convictions or sentences are required to proceed under Section 2255 in the district court of conviction. A petition for writ of habeas corpus, pursuant to Section 2241, on the other hand, is intended to address the **execution** of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated. Examples of an appropriate use of Section 2241 include "actions challenging the computation of parole, computation of good time or jail credits, prison disciplinary actions, or

imprisonment allegedly beyond the expiration of a sentence." Anderson v. Pettiford, 2007 WL 15777676 (D.S.C. May 31, 2007)(internal citations omitted).

While the terms of Section 2255 expressly prohibit prisoners from challenging their convictions and sentences through a habeas corpus petition under section 2241, there is nonetheless a "savings clause" in Section 2255. The savings clause allows a prisoner to challenge the validity of his conviction under Section 2241 **if** he can demonstrate that Section 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255. The law is clearly developed, however, that merely because relief has become unavailable under Section 2255 because of a limitation bar,[4] the prohibition against successive petitions, or a procedural bar due to failure to raise the issue on direct appeal, does not demonstrate that the section 2255 remedy is inadequate of ineffective. In re Vial, 115 F. 3d 1192, 1194 (4th Cir. 1997). A petitioner bears the burden of demonstrating that the Section 2255 remedy is inadequate or ineffective, and the standard is an extremely stringent one. In the Fourth Circuit, Section 2255 is deemed to be "inadequate and ineffective" to test the legality of a conviction **only** when all three of the following conditions are satisfied:

---

[4] In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. § 2255.
The limitation period shall run from the last of:
a. The date on which the judgment of conviction becomes final;
b. The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
c. The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
d. The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2255.

> (1) at the time of the conviction, the settled law of this Circuit or of the Supreme Court established the legality of the conviction;
>
> (2) subsequent to the prisoner's direct appeal and first section 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal, **and**
>
> (3) the prisoner cannot satisfy the gate-keeping provisions of section 2255 because the new rule is not one of constitutional law.

See In re Jones, 226 F.3d 328, 333-34 (4th Cir. 2000) (emphasis added).

Petitioner argues that because the indictment did not charge him with second degree murder, he is actually innocent of that charge, and he should be released from prison.[5] In this particular case, it is clear that Petitioner is not entitled to application of the savings clause. Even if Petitioner satisfied the first and third elements of Jones, murder remains a criminal offense. Petitioner clearly attacks the validity of his convictions but fails to establish that he meets the Jones requirements. Accordingly, Petitioner has not demonstrated that § 2255 is an adequate or ineffective remedy, and with respect to his claim regarding the indictment, he has improperly filed a § 2241 petition.

**Parole**

Petitioner argues that the Commission is unlawfully denying him parole in violation of 18 U.S.C. § 4206(d). However, Petitioner makes no discernible argument that would support this Court's intervention in the decision by the Commission to deny him "mandatory parole." Pursuant to 18 U.S.C. § 4206(d):

---

[5] In a document filed on May 10, 2015, Petition supplements his argument that he is actually innocent by noting that the chief expert witness at trial, anthropologist Walter Brikby, who performed a forensic autopsy on the child, testified and admitted on cross examination that he could not positively identify the skull as being the victim, Steven Marcel Wilson. ECF No. 25 at 2. In addition Petitioner alleges prosecutorial misconduct in closing argument. Id. at 3.

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section . . . shall be released on parole after having served two-thirds of each consecutive term or terms . . . [**p**]**rovided, however,** [t]hat the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or there is a reasonable probability that he will commit any Federal, State, or local crime.

(emphasis in original).

Petitioner's mandatory parole hearing was conducted on January 16, 2014. In recommending that mandatory parole be denied, the hearing examiner noted the following:

> The Examiner finds that the prisoner has frequently or seriously violated the rules of the institution or that there is a likelihood that the prisoner will commit any Federal, State or local crime based on the following reasons: Specifically, you have a criminal record which begins at age 14 and culminated at age 23 with your brutal murder of a 6-year-old boy. You slammed the victim's head against a wall, and then you immersed his body and scalding water causing the victim's skin to peel off from his thighs down. Finally, you buried your victim's body and threatened his mother to keep quiet. The Commission also finds you have seriously violated the rules of the institution in which you were confined. Specifically, you have incurred six infractions consisting of engaging in sexual acts (including masturbating openly in front of female staff), the last occurring in February 2012, and you have two infractions involving assault. Your prior record, base offense and institutional misconduct show a propensity for deviant and violent behavior.

ECF No. 22-1 at 60.

Clearly, in adopting the hearing examiner's findings, the Commission did not abuse its discretion, and there is no basis for this Court to reverse the decision denying Petitioner mandatory parole.

Petitioner also argues that the Commission's failure to release him constitutes cruel and unusual punishment. There can be no doubt that the Eighth Amendment prohibits the imposition of punishment that is grossly disproportionate to the severity of the crime. See Gregg v. Georgia, 428 U.S. 153 (1976). However, the Commission's action in denying parole

does not constitute the imposition of punishment. The focus of parole is rehabilitative, not punitive. Gagnon v. Scarpelli, 411 U.S. 778, 784 (1973). Because the Commission has not imposed punishment, Petitioner's Eighth Amendment claim must fail. See. e.g., Lustgarden v. Gunter, 966 F.2d 552, 5 5510 Cir. (1992) ("denial of parole under a statute dictating discretion in parole determination does not constitute cruel and unusual punishment."); Franklin v. Riley, No. 08 – 82, 2009 WL 86550 *3-4 (N.D.W.V. January 9, 2009) (holding that "because parole proceedings are not part of criminal prosecutions, the actions of the Commission do not constitute punishment" and therefore cannot violate the Eighth Amendment).

Finally, to the extent that Petitioner is challenging the Commission's decision at his most recent parole hearing in January 2016, the same must also fail. "The parole act specifically commits the decision to grant or deny parole to the unreviewable discretion of the Parole Commission." Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981); see also United States Bd. of Parole v. Merhige, 487 F.2d 25, 29 (4th Cir. 1973); Page v. Pearson, 261 F. Supp.2d 528, 530 (E.D. Va. 2003). Therefore, the Commission's "parole determination is only reviewable if the commission 'exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations' when reaching its determination." Garcia, 660 F.2d at 988. In the instant case, Petitioner has advanced no argument that the commission did any of these three during his last hearing. Therefore, this Court is without the authority to engage in judicial review of the Commission's substantive decision that Petitioner's failure to meaningfully participate during his hearing on January 5, 2016, constituted a waiver of the hearing.

**Recommendation**

In consideration of the foregoing, it is the undersigned's recommendation that Respondent's Motion to Dismiss, on in the Alternative, for Summary Judgment [ECF No. 21] be **GRANTED**, the Petitioner's Motion for Expedited Relief [ECF No. 6], Motion for Release on Person Recognizance [ECF No. 20] and Motion for Judgment on the Pleadings [ECF No. 32] be **DENIED** and the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be **DENIED AND DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Court Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for

Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

ENTER: November 1, 2016

                         */s Robert W. Trumble*
                         ROBERT W. TRUMBLE
                         UNITED STATES MAGISTRATE JUDGE